**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Kinnally, a single man; Charles Zovko and Dragica Zovko, husband and wife; William Coghlan and Cheryl Coghlan, husband and wife; and Kevin Sysak and April Sysak, husband and wife, | No. CV-06-2704-PHX-JAT |
| Plaintiffs, | **ORDER** |
| vs. | |
| Rogers Corporation, a Massachusetts corporation, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Motion for Adverse Inference Due to Spoliation of Evidence (Doc. # 92). The Court has considered Plaintiffs' Motion (Doc. # 92), Defendant's Response (Doc. # 100), and Plaintiffs' Reply (Doc. # 107). For the following reasons, the Court denies Plaintiffs' Motion.

I.     **BACKGROUND**

   **A. Factual Background**

Defendant Rogers Corporation ("Rogers") initiated a reduction in force ("RIF") on July 2004. (Doc. #100, at 2). Rogers contends the RIF was necessary to "cut costs in light of . . . worsening actual and projected sales." Id.

1        Plaintiffs Edward Kinnally, Charles Zovko, William Coghlan, and Kevin Sysak

2  ("Plaintiffs") were all employed by Rogers for varying periods of time and began working

3  for the Durel Division of Rogers at the time of its creation in 2003. (Doc. # 6, at 5).  While

4  working at Durel, Plaintiffs were all over the age of forty. Id.  On or about October 5, 2004,

5  Rogers terminated Plaintiffs, apparently in connection to the RIF. Id.  Plaintiffs brought suit

6  against Rogers claiming age discrimination under the Age Discrimination in Employment

7  Act ("ADEA"), 29 U.S.C. §§ 621–634, and seek damages, including back pay and front pay.

8  (Doc. # 6, at 8).

9        Before filing the present action, on June 27, 2005, Plaintiffs individually filed charges

10  of discrimination against Rogers with the U.S. Equal Employment Opportunity Commission

11  ("EEOC") and the Department of Labor ("DOL"). (Doc. # 92-2, at 3-6).  The EEOC

12  concluded its investigation and issued cause findings on July 20, 2006. (Doc. # 6, at 6).

13        Plaintiffs filed the present action on November 9, 2006. (Doc.# 1).  Later that month,

14  on November 28, 2006, Plaintiffs' counsel sent a letter to Rogers's counsel requesting that

15  appropriate actions be taken to prevent loss of relevant electronic information. (Doc. # 92-2,

16  at 13-14).

17        The Rule 16 Scheduling Order was issued on April 23, 2007 and set the discovery

18  deadline for February 25, 2008. (Doc. # 14).  Plaintiffs submitted requests for production on

19  October 3, 2007. (Doc. # 40).  Rogers responded on November 19, 2007, claiming that some

20  discovery requests were irrelevant, overbroad, and overburdenson. (Doc.# 100, at 4). Despite

21  its objections, Rogers's appears to have produced documents, subject to and without waiving

22  any objections. (Doc. # 92-2, at 22-29; 33-36).  Plaintiffs, in turn, responded in a letter and

23  email, dated January 24, 2008, addressing deficiencies in Rogers's discovery response and

24  requested a complete response by February 1, 2008. (Doc. # 92-2, at 40-45).  Rogers, in turn,

25  responded on February 2, 2008 addressing the deficiencies claimed by Plaintiffs. (Doc. # 92-

26  2, at 47-50).  Rogers responded with additional information, but primarily reiterated the

27  initial objections. Id.  There is no indication that Plaintiffs responded to Rogers's February

28

2, 2008 communication, which appears to be the final exchange between the parties on the present issues before the discovery deadline.

The issues raised by Plaintiffs in this motion were not brought to the Court's attention before the discovery deadline. On February 6, 2008, the Court heard a telephonic discovery dispute in relation to this case but that was initiated due to matters not at issue here. (Doc. # 74). Plaintiffs did not bring the present discovery issues to the Court's attention in the February 6, 2008 telephonic dispute, even though it would have been a proper forum. Neither did Plaintiffs raise a discovery dispute with the Court as the present issues before discovery closed on February 25, 2008. (Doc. # 100, at 5).

**B. Summary of Arguments**

Plaintiffs claim that Rogers had an affirmative duty to preserve evidence and further claim that Rogers failed to comply with that duty by failing to implement a timely litigation hold. Plaintiffs point out that the litigation hold email from Rogers's VP of Corporate Compliance and Control on April 10, 2007 to pertinent Rogers's employees (Doc. # 92-2, at 18-19) was sent years after the EEOC charges were filed and months after the letter from Plaintiffs' counsel requesting that Rogers enact appropriate steps to avoid spoilation. Plaintiffs argue that these untimely actions were ineffective to protect against spoilation of relevant evidence.

Plaintiffs further claim that Rogers failed to produce document retention and destruction policies. Plaintiffs claim that these policies are relevant and argues that the existence of such policies is implied by deposition testimony of a Rogers employee who could not access his Lotus Notes calendar. (Doc. # 92, at 4). Plaintiffs claim that if a data retention/destruction policy exists for Lotus Notes calendars, that further implies that other data retention/destruction policies exist.

Plaintiffs further claim that Rogers's failure to produce certain email evidence, technical notes, and lab books implies spoilation of evidence due to Rogers's failure to implement a litigation hold. Alternately, Plaintiffs claim that Rogers failed to make a diligent

1  and reasonable search for responsive documents.  In either case, Plaintiffs argues, a finding
2  of adverse inference is appropriate.

3          In response to the failure to issue a timely litigation hold, Rogers argues that, due to
4  the nature of the RIF planning process, no litigation hold letter was necessary because 1) the
5  RIF was primarily conducted verbally and 2) all documentation that was created regarding
6  the RIF was collected by Dean Sweeney, Durel's Human Resources Manager, at the end of
7  the RIF process.  Rogers further argues that the June 9, 2006 and April 10, 2007 emails to
8  the RIF Planning Committee members do not speak to the timeliness of the litigation hold
9  because the emails were simply reconfirmation that all materials had already been collected
10  and a reminder to retain any materials that had not been collected.  In addition, Rogers argues
11  that all information regarding the RIF had been collected as part of the EEOC/DOL
12  investigation and produced as part of initial discovery.

13          In response to the allegation of spoilation of evidence, Rogers argues that failure to
14  produce specific information does not equate to spoilation.  Rogers argues that Plaintiffs'
15  discovery disputes are untimely because Plaintiffs failed to raise a discovery dispute with the
16  Court before the close of discovery.  Rogers argues that it made a good faith attempt to
17  produce responsive documents in its possession notwithstanding its objections.  Rogers
18  argues that Plaintiffs' non-responsiveness to its objections and failure to seek court
19  intervention defeats Plaintiffs' claims for spoilation.  Rogers further argues that, even if
20  Plaintiffs had raised a timely discovery dispute, Plaintiffs failed to offer evidence showing
21  that any of the requested documents were destroyed.  Rogers argues that actual destruction
22  of evidence must be shown to establish spoilation and that Plaintiffs cannot demonstrate
23  destruction solely by an absence of evidence.

24  **II.  ANALYSIS AND CONCLUSION**
25          **A.  Legal Standard**
26          The Court's authority to sanction parties for spoilation of evidence springs from two
27  sources.  Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006).  The first is the
28  inherent power of the Court to issue sanctions in response to abusive litigation practices, Id.;

1    see also Chambers v. NASCO, Inc., 501 U.S. 32, 33 (1991). This inherent power is broad

2    and can range from minor sanctions, such as the awarding of attorney's fees, Leon, 464 F.3d

3    at 961, to more serious sanctions, such as dismissal of claims, Id. at 958, or instructing the

4    jury that it may draw an adverse inference,  In re Napster, Inc. Copyright Litigation, 462

5    F.Supp.2d 1060, 1078 (N.D. Ca 2006). Sanctions under these "inherent powers must be

6    exercised with restraint" and should be appropriate to the conduct that triggered the sanction.

7    Chambers, Inc., 501 U.S. at 43. The second source of authority is Federal Rule of Civil

8    Procedure 37(b), which allows sanctions against a party who "fails to obey an order to

9    provide or permit discovery." Leon, 464 F.3d at 958. A sanction under Rule 37(b) is only

10   appropriate when a party fails to obey a Court order.  Unigard Sec. Ins. Co. v. Lakewood

11   Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992).

12           In order to obtain a motion granting adverse inference due to spoliation under the

13   Court's inherent authority, the alleging party "must establish (1) that the party having control

14   over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the

15   records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was

16   relevant to the party's claim or defense such that a reasonable trier of fact could find that it

17   would support that claim or defense."  Napster, 462 F.Supp.2d at 1078 (citing Residential

18   Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2nd Cir. 2002)); accord Zubulake

19   v. UBS Warburg, LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); Byrnie v. Town of Cromwell,

20   Bd. of Educ., 243 F.3d 93, 107-08 (2nd Cir. 2001).

21           **B. Discussion**

22                   **1. Timeliness of Plaintiffs' discovery disputes**

23           The Rule 16 Scheduling Order ("Rule 16 Order") set the discovery deadline in this

24   dispute for February 26, 2008 and asked that all parties "conduct discovery in a expeditious

25   manner so as to **complete, within the deadline, any and all discovery**." (Doc. # 14, at 2-3).

26   To avoid misinterpretation, the Rule 16 Order expressly provided a definition for the word

27   "complete" as "the time to propound discovery, the time to answer all propounded discovery,

28   the time for the Court to resolve all discovery disputes, and the time to complete any final

1    discovery necessitated by the Court's rulings on any discovery dispute." Id. at 3 n.3.  This

2    definition makes clear, short of expressly stating, that all discovery disputes should be raised

3    within the discovery period.

4            In light of the Rule 16 Order, Plaintiffs' complaints as to Rogers's failure to produce

5    evidence during discovery are not well grounded.  Such complaints are clearly discovery

6    disputes and Plaintiffs have offered no explanation as to why they were not brought to the

7    Court's attention before the close of discovery.  The information available to the Court

8    indicates that Plaintiffs had ample opportunity to bring such issues to the Court's attention.

9    For example, Rogers responded twice with nearly identical sets of objections to Plaintiffs'

10   discovery requests.  The first set of objections were made on November 19, 2007, within two

11   months of the discovery deadline.  Plaintiffs' responded on January 24, 2008, leaving one

12   month to the close of discovery.  Rogers reiterated their objections on February 2, 2008.

13   Plaintiffs did not respond to this second, and final, set of objections.  In addition, Plaintiffs

14   did not raise an issue with the Court even though both sets of objections were substantially

15   the same and the discovery deadline was within the month.

16           Once Rogers issued discovery objections, Plaintiffs then assumed the responsibility

17   to challenge the objections.  Federal Procedure, Lawyers Edition § 26:778 ("Once a party

18   registers a timely objection to requested production, the initiative rests with the party seeking

19   production to move for an order compelling.").  Plaintiffs had at least two available courses

20   of action to address the discovery disputes within the allowable period.  First, Plaintiffs could

21   have brought these issues to the Court's attention at the February 6, 2008 telephonic

22   discovery dispute.  It is certainly conceivable that Plaintiffs had not received Rogers response

23   because of the short amount of time between Rogers's response and the February 6 dispute

24   (two business days).  Nevertheless, it would have been prudent for Plaintiffs to raise the

25   issues with the Court in light of the looming discovery deadline.  The second course of action

26   was for Plaintiffs to raise an issue with the Court immediately upon receiving Rogers's

27   second objection, leaving over two weeks to resolve any disputes.

28           Any issue that could be considered a discovery dispute and that the party could have

1    brought to the Court's attention during the allowable discovery period must be viewed, after

2    the close of discovery, as an untimely discovery dispute.  Such issues include Rogers's

3    alleged failure to produce a Document Retention Policy, (Doc. # 92, at 3), Rogers's alleged

4    failure to produce email evidence, (Doc. # 92, at 4), and Rogers's alleged failure to produce

5    technical notes, lab books, and other documents, (Doc. # 92, at 7).  With regard to each of

6    these issues, Rogers had responded to Plaintiffs' discovery requests with objections. (Doc.

7    # 92-2).  Therefore, Plaintiffs' discovery issues that could have been, but nonetheless were

8    not, raised during the allowable discovery period are considered untimely.

9          Plaintiffs, however, might be able to raise discovery complaints after the discovery

10   deadline if bad faith actions by Rogers prevented Plaintiffs from raising complaints before

11   the deadline. Blauinsel Stiftung v. Sumitomo Corp., 88 Fed.Appx. 443, 445 (2nd Cir. 2004)

12   (quoting Residential Funding Corp. v. Degeorge Fin. Corp., 306 F.3d 99, 106-07) (the court

13   has the authority, under its "inherent power to manage its own affairs," to impose sanctions

14   when a party, acting in bad faith, evades discovery obligations).  Plaintiffs, however, have

15   not shown that Rogers acted in bad faith during the allowable discovery period in a manner

16   that prevented Plaintiffs from raising a discovery issue before the Court (the claim of

17   spoliation will be addressed separately below).

18         In summary, Plaintiffs had ample opportunity to raise each discovery complaint

19   presently at issue before the discovery deadline.  The expectations for the discovery period

20   were specified in the Rule 16 Order.  Plaintiffs' failure to take timely action and notify the

21   Court of any dispute before the close of discovery precludes Plaintiffs from now raising these

22   issues.

23         **2. Spoliation**

24         The Court cannot impose sanctions based on Plaintiffs' allegations pursuant to Rule

25   37.  Sanctions under Rule 37 are allowed only against a party that disobeys a court issued

1    discovery order.[1]  Unigard, 982 F.2d at 368; Brandt v. Vulcan, Inc., 30 F.3d 752, 756 (7th

2    Cir. 1994).  Rule 37 sanctions are unavailable because the Court did not issue a discovery

3    order concerning the discovery disputes at issue here.

4         In order for the Court to impose sanctions, including spoliation, under its inherent

5    authority, the three part test in Napster must be satisfied.  All elements of the Napster test

6    presume that relevant evidence has indeed been destroyed.  Plaintiffs, however, have not

7    shown that Rogers destroyed relevant evidence, but instead, simply cite facts that *suggest*

8    evidence *may have* been destroyed.  For example, Plaintiffs point out that two Rogers's

9    employees mentioned that their Lotus Notes calenders were automatically deleted after some

10   period of time, thereby showing destruction of relevant evidence and "strongly suggest[ing]"

11   that Rogers may have other document destruction policies. (Doc. # 92, at 13).  There are two

12   problems with Plaintiffs' contentions.  First, it is unclear how this calendar information is

13   *relevant* evidence in this case.  Second, Rogers has produced an affidavit from its Director

14   of Information Technology stating that Rogers has no document destruction policy and that

15   Rogers has "preserved and retained back-up tapes of electronically stored information,

16   including Lotus Notes and server data, dating back to 2004." (Doc. # 100-2, 56).

17        In another example, Plaintiffs point to emails that they argue Rogers should have

18   produced during discovery.  Plaintiffs claim that the mere fact that Rogers failed to produce

19   these particular emails is evidence of spoliation. (Doc.# 92, at 6).  Plaintiffs make similar

20   claims, namely that failure to produce suggests documents have been destroyed, regarding

21   technical notes, lab notes, and other documents. (Doc. # 92, at 7).  In each of these instances,

22   however, Plaintiffs have shown nothing beyond a mere lack of production to establish

23   spoliation.  Furthermore, in each of these instances, Rogers had responded to Plaintiffs'

24   discovery request with objections. (Doc. # 92-2, at 21-38; 92-3, at 3-29).

25        In cases where courts have found spoliation, there was a clear showing of destruction

26

27        [1]  An order need not be in writing.  A verbal communication is a valid order for
     purposes of Rule 37(b).  Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir. 1974).

28

of evidence.  In <u>Napster</u>, 462 F.Supp.2d at 1066, there was evidence of an explicit destruction policy that was not suspended, resulting in unquestionable destruction of relevant email evidence.  In <u>Zubulake</u>, 220 F.R.D. at 220, defendant expressly acknowledged that backup tapes under their control and containing relevant evidence were missing.  In <u>National Ass'n of Radiation Survivors</u>, 155 F.R.D. 543, 557 (N.D. Cal. 1987), there were "no questions that relevant documents were destroyed and are not permanently lost."  The district court in <u>Residential Funding</u>, 306 F.3d at 110, originally held that "purposely sluggish" behavior was enough to warrant an adverse inference instruction due to spoliation.  The Second Circuit, however, held that the district court applied the wrong standard because "the evidence at issue was apparently not destroyed, but merely not timely produced."  <u>Id.</u> at 112.

Distinguished from the abovementioned cases, Plaintiffs' allegations contain only an *inference* that evidence may have been destroyed based on the mere lack of evidence produced by Rogers.  Due to the nature of the sanctions requested, the burden for showing destruction of relevant evidence should require more than a suggestion or implication. <u>See</u> <u>FMC Technologies, Inc. v. Edwards</u>, 2007 WL 1725098 (W.D. Wash. 2007) ("In *Leon*, spoliation of evidence was clear. Here, however, Plaintiffs' allegations regarding the destruction of computer files are anything but clear and this Court cannot find Plaintiffs' assertions any more or less credible than Defendants' explanations for the 'missing' data."). The inferences suggested by Plaintiffs cannot be used to trigger sanctions on the present facts, especially in light of Rogers's objections to discovery requests and Plaintiffs' failure to raise an issue with the Court during the allowable discovery period.

Additionally, the basis for the inference - that there is a lack of evidence - should also be examined.  It is not clear that there is an actual lack of evidence here.  Rogers has made facially reasonable objections to Plaintiffs' discovery requests.  As discussed above, Plaintiffs did not take adequate action to resolve the discovery disputes.  It would be improper to conclude that Rogers did not produce the required amount of evidence when Plaintiffs had means at their disposal to compel further production, but failed to exercise

1   those means.  It would be doubly improper to then conclude that Rogers destroyed evidence

2   based on Rogers's lack of production.

3        The majority of Plaintiffs' arguments regarding spoliation are actually untimely

4   discovery disputes.  But even if the arguments were properly before the Court at this

5   juncture, Plaintiffs' have not satisfied the requirements for a spoliation inference.

6        **3.  Untimely litigation hold**

7        Plaintiffs argue that Rogers's failure to issue a timely litigation hold resulted in

8   destruction of evidence.  While this was the case in <u>Napster</u>, where failure to implement a

9   timely litigation hold resulted in the inevitable destruction of evidence, it does not appear to

10  be the case here.  First, the absence of a *written* litigation hold shortly after Rogers learned

11  of Plaintiffs' suit does not in itself establish untimeliness.  While a party must "put in place

12  a 'litigation hold' to ensure the preservation of relevant documents," <u>Napster</u>, 462 F.Supp.2d

13  at 1070 (citing <u>Zubulake</u>, 220 F.R.D. at 218),  there is no requirement that it must be *written*.

14       Second, it appears that Rogers took the appropriate actions to preserve evidence,

15  despite the absence of a written litigation hold.  Rogers contends that the RIF was primarily

16  conducted verbally and the sparse documentation created was collected by Mr. Sweeney at

17  the end of the RIF process.  Mr. Sweeney also claims that a litigation hold was issued

18  verbally at the start of the EEOC/DOL investigation.  In addition, two subsequent messages

19  were sent to the RIF Planning Committee and neither resulted in any additional information.

20  Plaintiffs have produced no evidence to cast doubt on these contentions, in deposition or

21  otherwise.  The absence or untimeliness of a *written* litigation hold is relevant to a spoliation

22  claim, but it alone is not dispositive.

23       There does not appear to be any justifiable grounds, under the present information,

24  to conclude that a written litigation hold was necessary or to conclude that relevant

25  information was destroyed simply because a written litigation hold was not circulated at the

26  start of litigation.

27  ///

28  ///

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion (Doc. # 92) for Adverse Inference Due to Spoliation of Evidence is **DENIED**.

DATED this 7th day of November, 2008.

James A. Teilborg
United States District Judge