**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Kinnally, a single man; Charles Zovko and Dragica Zovko, husband and wife; William Coghlan and Cheryl Coghlan, husband and wife; and Kevin Sysak and April Sysak, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Rogers Corporation, a Massachusetts corporation,<br><br>Defendant. | No. CV-06-2704-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. #93). The Court has considered Defendant's Motion, Plaintiffs' Response (Doc. # 103), and Defendant's Reply (Doc. # 135). For the following reasons, the Court grants Defendant's Motion.

**I.    BACKGROUND**

Plaintiffs Kinnally, Zovko, Coghlan, and Sysak all worked for the Durel Division of Defendant Rogers Corporation. Plaintiffs Coghlan, Sysak, and Zovko worked in Durel's Research and Development ("R&D") Department. (Defendant's Separate Statement of Facts in Support of its Motion for Summary Judgment "DSOF", Doc. #94, ¶17). Plaintiff Kinnally worked in Durel's Automotive Group, which is part of Durel's Marketing Department. (Doc. #94 ¶25).

1     In the second quarter of 2004, Defendant's president expressed concerns to Mike Bessette, Durel Division's Vice President, regarding Durel's softening financial performance. (Doc. #94 ¶31). In July of 2004, Mr. Bessette concluded that he would need to institute a Reduction in Force ("RIF") in reaction to declining sales and profits. (Doc. #94 ¶34). Mr. Bessette determined that he needed to cut Durel's salaried employees by roughly fifteen to twenty percent. (Doc. #94 ¶39).

    Mr. Bessette met with each of Durel's department heads regarding the RIF in August and September of 2004. (Doc. #94 ¶46). He asked the department heads to rank their employees considering the business plan and the capabilities and experiences Durel would need to go forward. (Doc. #94 ¶47). Walt Paciorek, head of Durel's R&D Department, initially resisted ranking his employees. (Doc. #94 ¶59). Mr. Bessette suggested that Mr. Paciorek consider Plaintiffs Coghlan, Sysak, and Zovko for the RIF. (Doc. #94 ¶60). Mr. Barker, head of the Automotive Group, recommended Plaintiff Kinnally for the RIF. (Doc. #94 ¶78).

    On October 5, 2004, Durel terminated Plaintiffs Kinnally, Zovko, Coghlan, and Sysak as part of the larger RIF. (Doc. #94 ¶95). All the Plaintiffs were over the age of forty at the time of their termination. After exhausting their administrative remedies, Plaintiffs filed this action for age discrimination.

## II. ANALYSIS AND CONCLUSION

### A. Legal Standard

    Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

1    Initially, the movant bears the burden of pointing out to the Court the basis for the
2 motion and the elements of the causes of action upon which the non-movant will be unable
3 to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the
4 non-movant to establish the existence of material fact. *Id*. The non-movant "must do more
5 than simply show that there is some metaphysical doubt as to the material facts" by
6 "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"
7 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting
8 Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a
9 reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,*
10 *Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are
11 insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.*
12 at 247-48. However, in the summary judgment context, the Court construes all disputed facts
13 in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072,
14 1075 (9th Cir. 2004).

15    **B. Disparate Treatment**

16    The Age Discrimination in Employment Act (the "ADEA") prohibits employers from
17 firing a person, who is at least forty years old, because of his or her age. *Enlow v. Salem-*
18 *Keizer Yellow Cab Co.*, 389 F.3d 802, 811(9th Cir. 2004)(quoting 29 U.S.C. §623(a)(1)).
19 A plaintiff can recover on a disparate treatment theory under the ADEA if an employer has
20 treated the plaintiff less favorably than others because of the plaintiff's age. *Id.* The
21 employer's liability depends on whether the plaintiff's age "*actually* motivated the
22 employer's decision." *Id.* (emphasis in original)(internal quotations omitted).

23    If a plaintiff has alleged direct evidence of age discrimination, then the Court does not
24 engage in the *McDonnell Douglas* burden-shifting analysis. *Id.* at 812. Direct evidence in
25 the context of an ADEA claim is evidence "of conduct or statements made by persons
26 involved in the decision-making process that may be viewed as directly reflecting the alleged
27 discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was
28 more likely than not a motivating factor in the employer's decision." *Id.* (internal quotations

1  omitted). Direct evidence is evidence that, if true, proves the fact of discriminatory animus
2  without inference. *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

3  Plaintiffs argue that they have alleged direct evidence of age discrimination and
4  therefore do not have to meet the requirements of the burden-shifting analysis. Plaintiffs
5  claim that the following constitute direct evidence of age discrimination: 1) notations by the
6  HR Director on a chart indicating questions about whether someone being considered for the
7  RIF was retiring or close to retirement; 2) one list prepared by the HR Director was
8  organized by age; 3) Dr. Coghlan was asked one day in the hallway when he was going to
9  retire; and 4) an alleged joke made by Mr. Paciorek that Renato Rodic was included in the
10 RIF list to avoid an age discrimination issue. (Plaintiffs' Response to Defendant's Motion
11 for Summary Judgment, Doc. #103, pp. 4-5).

12 The Court does not agree with Plaintiffs that these allegations provide direct evidence
13 of age discrimination. All the allegations involve an additional inferential step to
14 demonstrate possible discrimination, and Mr. Paciorek's disputed joke certainly does not
15 qualify as clear evidence of discrimination. Because the Court finds Plaintiffs have not
16 offered direct evidence of discrimination, the Court must engage in the burden-shifting
17 analysis.

18 Under the burden-shifting framework, the Plaintiffs must first establish a prima facie
19 case of discrimination. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1997).
20 If the Plaintiffs make a prima facie case by raising a presumption of discrimination, the
21 burden shifts to Defendant to articulate legitimate, nondiscriminatory reasons for Plaintiffs'
22 inclusion in the RIF. *Id.* If Defendant does so, Plaintiffs then must demonstrate that the
23 alleged reasons were pretext for age discrimination. *Id.* Plaintiffs do not have to prove
24 pretext at the summary judgment stage, but they do have to introduce evidence sufficient to
25 raise a genuine issue of material fact regarding whether Defendant's articulated reasons are
26 pretextual. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000).

27
28

**1. Prima Facie Case**

To establish a prima facie case of disparate treatment under the ADEA, an employee must demonstrate that he: "(1) was a member of the protected class, age 40-70; (2) was performing his job in a satisfactory manner; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications." *Nesbit v. Pepsico*, 994 F.2d 703, 704-05 (9th Cir. 1993). The amount of proof necessary to establish a prima facie case for age discrimination is minimal. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Defendant does not dispute that Plaintiffs have demonstrated the first three elements, but argues that Plaintiffs have not satisfied the fourth element. When, as here, the employee lost his job in a RIF, the employee may satisfy the fourth requirement by introducing circumstantial, statistical, or direct evidence that the termination occurred under circumstances giving rise to an inference of age discrimination. *Nesbit*, 994 F.2d at 705. Plaintiffs offer the following as support for their prima facie case: 1) a statistically significant impact on employees aged 60 and over; 2) Defendant knew the ages of the Plaintiffs; 3) Defendant offered alternative employment to a 24-year old included in the RIF, but not to Plaintiffs; 4) the individuals who replaced Mr. Kinnally and Dr. Sysak were not better qualified; and 5) the EEOC issued a reasonable cause determination to Plaintiffs. (Doc. #103, pp. 8-9).

The Court considers Plaintiffs' proffered statistical evidence with caution. *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1998)("[I]n certain cases we can infer intent from statistical evidence. Courts, however, should rely on statistics with caution.")(internal citations omitted). That caution is heightened in this case because of the relatively small pool from which the statistics were drawn. Defendant terminated either twelve or thirteen salaried employees out of the seventy-two salaried employees who worked in the Durel Division at the time of the RIF. The small size of the pool decreases the significance of the statistical evidence. *See Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1076 (9th Cir. 1986)("[S]tatistical evidence derived from an extremely small universe

has little predictive value and must be disregarded . . . The problem with small labor pools is that slight changes in the data can drastically alter appearances.")(internal citations omitted).

While the Court does not give much weight to the statistical evidence, it will not completely disregard the evidence, at least not on the disparate treatment theory. Plaintiffs' statistical expert has testified that Durel employees who were aged sixty and over at the time of the RIF were five times more likely to be included in the RIF group than those younger than sixty. (Plaintiffs' Controverting and Separate Statement of Facts "PCSOF," Doc. #104, ¶172). The expert concluded that an increased likelihood of five percent was highly statistically significant. (Doc. #104 ¶172).

Defendant argues that the Court should ignore Plaintiffs' statistical evidence because the only relevant age group is the protected group, or forty years old and older, and both experts agree that the RIF did not have a statistically significant impact on Durel employees aged forty and over. The Court disagrees with Defendant, at least with regard to Plaintiffs' disparate treatment theory. The Ninth Circuit Court of Appeals has held that statistics that do not isolate a forty-and-above category are not completely irrelevant to establishing a prima facie case for disparate treatment. *Mangold v. California Pub. Util. Comm'n*, 67 F.3d 1470, 1476 (9th Cir. 1995)("However, merely because the statistics do not isolate a 40-and-above category does not render the statistics irrelevant."). The lack of statistical significance in the forty-and-above group cuts against the weight of Plaintiffs' statistical evidence, rather than its relevance. *Id.* ("[T]he composition of the promotion pools went towards the weight, not the admissibility, of the statistical evidence."). So, while the Court gives little weight to the statistical evidence for the reasons stated, it will not completely disregard the evidence when determining if Plaintiffs have met their prima facie burden.

Plaintiffs also argue that Defendant's knowledge, because of their proximity to retirement, of their ages raises an inference of discrimination. An employer's analysis of which groups might be affected by a RIF does not establish discrimination. An employee alleging disparate treatment cannot merely show that an employer knew a given policy would

lead to adverse consequences for a given group. *Forsberg*, 840 F.2d at 1418. The employee must show "that an employer chose the particular policy because of its effect on members of a protected class." *Id*. But while Defendant's knowledge of Plaintiffs' ages does not establish disparate treatment, it does lend minimal support to an inference of discrimination. *See Coleman*, 521 F.3d at 1210.

Plaintiffs further argue that Defendant, contrary to alleged company policy, did not find alternative employment for Plaintiffs, despite offering alternative employment to a 24-year old included in the RIF. The Court notes that employers who engage in RIFs have no obligation to transfer employees to another position. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1422-23 (9th Cir. 1990)("When an employer reduces its work force for economic reasons, it incurs no duty to transfer the employee to another position within the company.")(internal citations omitted). Plaintiffs have named only one employee included in the RIF who received an offer of alternate employment. Although that employee was under the age of forty, offering one younger employee an alternate job does not demonstrate a pattern of discrimination. Nonetheless, the Court considers this evidence slightly probative.

Plaintiffs additionally argue that Defendant "replaced" Mr. Kinnally and Dr. Sysak with people who were not better qualified. Defendant had to lay off one of the two salaried employees in the Automotive Group; either Mr. Kinnally or Ms. Sushil Vij. ( DSOF, Doc. #94, ¶52). Defendant chose to terminate Plaintiff Kinnally. (Doc. #94, ¶55).

Ms. Vij left the Automotive group after the October 2005 RIF, and Defendant posted a position for an Applications Engineer in July of 2005. (Doc. #104, ¶163). Plaintiffs claim the job opening was essentially the same job that Mr. Kinnally had performed, but Defendant did not offer the job to Mr. Kinnally. (Doc. #104, ¶¶163&165). Defendant eventually hired a man in his thirties. (Doc. #104, ¶166).

The Court gives little weight to this argument. Defendant did not replace Mr. Kinnally with a younger worker; Defendant did not replace him at all. The candidate selected to remain with Defendant in the Automotive Group, Ms. Vij, quit almost a year after the RIF. Defendant eventually hired someone to fill the empty position in the department.

1  The fact that Defendant hired someone under the age of forty almost a year after the RIF does
2  not raise an inference of discrimination. *See Rose*, 902 F.2d at 1422 (Rejecting age
3  discrimination argument based on a younger employee's assumption of terminated
4  employee's responsibilities six or seven months after his termination).

5  Plaintiffs argue that Defendant also replaced Dr. Sysak with someone who was not
6  more qualified. Again, Defendant did not replace Dr. Sysak. Rather, in July of 2005, months
7  after the RIF, Defendant posted a job opening for a senior development engineer. (Doc. #104
8  ¶167). Defendant ultimately filled that position with another organic chemist who was in his
9  late forties or early fifties. Although the other chemist was younger than Dr. Sysak, the
10 Court does not find that Defendant's selection of someone possibly in his early fifties raises
11 an inference of age discrimination.

12 Finally, Plaintiffs rely on the EEOC cause determination to meet their prima facie
13 burden. An EEOC determination letter does not give employees a "free pass through
14 summary judgment." *Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005).
15 If the EEOC's determinations are conclusory and devoid of analysis, courts should afford
16 them little weight. *Coleman*, 232 F.3d at 1281. Because the EEOC determinations in this
17 case lacked any analysis whatsoever, the Court attributes little weight to them.

18 Plaintiffs have offered very little significant evidence of disparate treatment based on
19 age. Courts with arguably stronger evidence of discriminatory intent have found the
20 evidence insufficient to establish a prima facie case. *See, e.g., Nesbit*, 994 F.2d at 705
21 (Holding prima facie burden not met where the plaintiffs introduced: 1) statistical evidence
22 that some older workers were terminated, while some younger workers were retained; 2) a
23 comment by a direct supervisor that "we don't necessarily like grey hair"; and 3) evidence
24 that the Senior Vice President of Personnel of the defendant stated in an interview that the
25 employer did not "want unpromotable fifty-year olds around."). Nonetheless, despite the
26 weakness of Plaintiffs' prima facie case, given the low threshold required, the Court finds
27 Plaintiffs have satisfied their prima facie burden.
28

**2. Defendant's Burden**

By making their prima facie case, Plaintiffs have raised a rebuttable presumption that Defendant violated the ADEA. *Coleman*, 232 F.3d at 1282. Defendant now must articulate legitimate, non-discriminatory reasons for including Plaintiffs in the RIF. *Id*. Defendant has stated that it terminated the Plaintiffs as a part of the October 2005 RIF in order to reduce costs. A reduction in force is a legitimate, nondiscriminatory reason for laying off an employee. *Id*. But Defendant must do more than allege a general reduction in force. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1211-12 (9th Cir. 2008). It must explain why it chose to include Plaintiffs in the RIF. *Id*. Defendant has met that burden by describing the process of selection for the RIF and why it included Plaintiffs in the RIF.

**3. Pretext**

Because Defendant has met its burden of providing legitimate, nondiscriminatory reasons for terminating Plaintiffs, the presumption of unlawful age discrimination completely drops out of the case. *Coleman*, 232 F.3d at 1282. To avoid summary judgment, therefore, Plaintiffs must introduce enough evidence to raise a genuine issue of material fact as to whether Defendant's articulated reasons are pretexts for age discrimination. *Id*. The mere existence of a prima facie case, based on the minimum evidence necessary, does not preclude summary judgment. *Wallis*, 26 F.3d at 890 ("And, in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue of fact."). Plaintiffs must produce "'specific, substantial evidence of pretext.'" *Coleman*, 232 F.3d at 1282 (quoting *Wallis*, 26 F.3d at 890).

Before reaching Plaintiffs' pretext arguments, the Court will address the Defendant's same-actor-inference claim. In *Bradley v. Harcourt, Brace & Co.*, the Ninth Circuit Court of Appeals held that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." 104 F.3d 267, 2670-71 (9th Cir.

1996). The same-actor inference is based on the principle that an employer's willingness to hire an employee provides strong evidence that the employer has no bias against the protected class to which the employee belongs. *Coghlan*, 413 F.3d at 1096. The same-actor inference can attach even when the same person made the employment decisions within three years. *Id.* at 1097. To defeat the same-actor inference the employee must make an "extraordinarily strong showing of discrimination." *Id.*

Defendant argues it is entitled to the same-actor inference for the claims of Plaintiffs Coghlan, Zovko, and Sysak because the same person, Mr. Paciorek, hired and/or promoted them and terminated them. (Doc. #93, p.16). Plaintiffs do not dispute that Mr. Paciorek hired Dr. Sysak in January 1997, when Dr. Sysak was fifty-two years old, and promoted him in 2002, when he was fifty-eight years old. (Doc. #94 ¶¶21-22). Mr. Paciorek hired Dr. Coghlan as a part-time consultant in 1998, when Dr. Coghlan was forty-seven years old, and invited him to become a full-time employee in 1998, when Dr. Coghlan was nearly fifty-seven years old. (Doc. # 94 ¶¶18-19). Although he did not hire Mr. Zovko originally, Mr. Paciorek did promote Mr. Zovko in July 2001, when he was fifty-nine years old. (Doc. #94 ¶23).

Plaintiffs argue that the same-actor inference does not apply here, however, because Mr. Paciorek did not make the decision to include Plaintiffs Sysak, Coghlan, and Zovko in the RIF. (Doc. #104 ¶¶100, 101, 104). Plaintiffs claim that Mr. Paciorek told Dr. Coghlan and a co-worker that Mr. Paciorek did not select the employees for the RIF. (Doc. #104 ¶¶100, 101, 104). Defendants maintain that although Mr. Paciorek initially did not want to rank his employees for purposes of the RIF (Doc. #94 ¶59), after careful consideration, he eventually and painfully agreed with the suggestion to select Plaintiffs Coghlan, Sysak, and Zovko for the RIF (Doc. #94, ¶¶71&73). Plaintiffs Sysak, Coghlan, and Zovko do not dispute that Mr. Paciorek informed them of their terminations.

Mr. Paciorek's alleged statements to Dr. Coghlan do not necessarily contradict Defendant's version of events. Mr. Paciorek did not want to terminate any of his employees. He resisted having to rank them. Mr. Paciorek did not make any suggestions for the RIF of

- 10 -

his own. He only reluctantly agreed with the suggestions he received. Morever, Mr. Paciorek could have wanted to deflect any blame from himself. Nonetheless, Plaintiffs have raised enough of a fact issue to preclude giving Defendant the normally very strong inference of nondiscrimination. But the Court will not completely ignore the same-actor inference, and the inference will slightly increase the amount of evidence needed by Plaintiffs Sysak, Coghlan, and Zovko to demonstrate pretext.

Plaintiffs offer the following as specific, substantial evidence of pretext: 1) Defendant used subjective criteria to select employees for the RIF; 2) Defendant considered retirement and age when making selections, and Plaintiff Kinnally was asked his age during an interview a year before the RIF; 3) Defendant tweaked the RIF list to avoid having an age-related adverse impact; 4) it did not make good business sense to terminate Plaintiffs because they were highly qualified and could contribute the most; 5) the statistical impact of the RIF on employees aged sixty and older; 6) Defendant did not terminate any inverter employees; and 7) inconsistencies exist between Defendant's claims, EEOC testimony, deposition testimony, and position statements (Doc. #103, pp.11-13).

The Court previously has addressed Defendant's knowledge of Plaintiffs' ages, the potential impact of the RIF on employees forty and older, and the statistical impact of the RIF on people over the age of sixty. Although the Court considered those factors when analyzing whether Plaintiffs met their prima facie burden,[1] it did not give them much weight and does not find them sufficient to create an issue of fact on pretext.

The Court now turns to the other evidence of pretext offered by Plaintiffs. First, Plaintiffs allege that Defendant's use of subjective criteria to lay off people demonstrates pretext. The use of a subjective evaluation system for a RIF is not per se discriminatory.

---

[1] The Court additionally notes that it is harder to use statistics to prove pretext than to make a prima facie case. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000)("While statistics are often probative in determining the existence of a pattern or practice of disparate treatment, their usefulness in proving pretext depends primarily upon their relevance to the specific decision affecting the individual plaintiff, and not those that affect [the] protected class in general.")(internal quotations omitted).

- 11 -

*Coleman*, 232 F.3d at 1285. In fact, the relevance of the use of a subjective method to prove "discriminatory intent is weak." *Id.* (quoting *Sengupta*, 804 F.2d at 1075).

Plaintiffs also argue that Defendant's proffered reason for laying off Plaintiffs – that they did not offer the best hope for meeting Durel's short-term business goals – makes no sense because Plaintiffs were highly qualified and could contribute the most to the division. Although the Court does not doubt that Plaintiffs are intelligent, capable people, their subjective beliefs about their competence do not raise a genuine issue of material fact. *See id.* Morever, the Court's role is not to question whether Defendant picked the most appropriate people for the RIF, but whether Defendant did so with a discriminatory motive. *Id.* (stating, "That Quaker made unwise business judgments or that it used a faulty evaluation system does not support the inference that Quaker discriminated on the basis of age."); *see also Pottenger v. Potlach Corp.*, 329 F.3d 740, 748-49 (9th Cir. 2003)(stating that employers have the "leeway to make subjective business decisions, even bad ones.").

Plaintiffs contend that Defendant's failure to fire anyone in Durel's inverter department, even though Defendant stated this department was not performing, indicates pretext. The Court does not agree that this factor supports a finding of pretext. Finally, Plaintiffs argue that certain inconsistencies in Defendant's statements and positions point toward pretext. The Court finds, however, that Defendant has not made any materially inconsistent statements regarding the reason for terminating Plaintiffs.

As the Court previously stated, the mere existence of a prima facie case, based on the minimum evidence necessary, does not preclude summary judgment. *Wallis*, 26 F.3d at 890 ("And, in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue of fact."). The Court finds that Plaintiffs introduced only the minimal amount of evidence necessary to meet their prima facie burden and have not produced substantial, specific evidence of pretext. Plaintiffs therefore have not met their burden of introducing enough evidence to raise a genuine issue of material fact as to whether Defendant's articulated reasons for their termination are pretextual.

Because the Plaintiffs have not met their burden on pretext, the Court grants summary judgment to Defendant on Plaintiffs' disparate treatment theory.

**C. Disparate Impact**

The ADEA authorizes recovery on a disparate-impact theory as well as a disparate-treatment theory. *Smith v. City of Jackson, Mississippi*, 544 U.S. 228, 240 (2005). Defendant does not dispute that a disparate impact theory exists under the ADEA, but argues that Plaintiffs have not preserved a disparate impact theory and that the Court should not allow Plaintiffs to assert the theory at this late stage. Courts have prohibited plaintiffs from presenting a disparate impact theory for the first time on summary judgment if they did not preserve the issue in their complaint. *See e.g., Coleman*, 232 F.3d at 1291-94.

Plaintiffs' Complaint certainly seems geared toward a disparate treatment theory. But they do mention that the lay off had a statistically significant impact on employees aged sixty or older. (Third Amended Complaint, Doc. #113, ¶32). Also, Plaintiffs have presented expert testimony on the statistical impact of the RIF. The Court finds that although it is a close call, Plaintiffs have adequately preserved a disparate impact theory.

Disparate impact claims involve facially-neutral employment practices that in fact impact more harshly on one group than another and that the employer cannot justify by business necessity. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). Under a disparate impact theory, Plaintiffs do not have to prove discriminatory motive or intent. *Coleman*, 232 F,3d at 1291. To make a prima facie case on their disparate impact claim Plaintiffs must demonstrate: "(1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular age produced by the employer's facially neutral acts or practices." *Palmer v. United States of America*, 794 F.2d 534, 538 (9th Cir. 1986). Plaintiffs must prove discriminatory impact; raising an inference is insufficient. *Id.* at 538-39. Plaintiffs must also prove causation. *Rose*, 902 F.2d at 1424.

If Plaintiffs make their prima facie showing, then Defendant can either discredit the Plaintiffs' statistics or proffer statistics of its own that shows no disparity exists. *Id.*

- 13 -

1 Defendant also can introduce evidence that its disparate employment practices are based on legitimate business reasons, such as job-relatedness or business necessity. *Id.* Plaintiffs may then demonstrate that other tests or selection devices, without a discriminatory effect, also would have served Defendant's business interests. *Id.*

Plaintiffs have met the first requirement for their prima facie case. Plaintiffs may use the disparate impact analysis to challenge subjective employment criteria, like the RIF selections involved here. *Id.* "[A]n employer's facially neutral practice of committing employment decisions to the subjective discretion of supervisory employees [is] a specific employment practice properly subject to a disparate impact analysis." *Id.* (citing *Watson v. Fort Worth Bank & Trust*, 108 S.Ct. 2777, 2786-87, 487 U.S. 977 (1988)).

Plaintiffs' disparate impact claim nonetheless fails because they have not demonstrated that the RIF disproportionately impacted employees in the protected age group – age forty and older. The parties agree that the RIF did not have a statistically significant impact on people in the forty-and-over age group, but Plaintiffs argue they can satisfy their burden with the statistical evidence regarding the impact on people aged sixty and over.

The Ninth Circuit Court of Appeals has not addressed whether employees can use statistical evidence of an adverse impact on age sub-classes to satisfy their burden on a disparate impact claim. *Katz v. Regents of the Univ. of California*, 229 F.3d 831, 835-36 (9th Cir. 2000). Other circuits have held that "claims based on the adverse impact of a policy among sub-classes within a larger protected class are not cognizable." *Id.* at 835 (citing *EEOC v. McDonnell Douglas Corp.,* 191 F.3d 948 (8th Cir. 1999); *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102 (2d Cir. 1997)). The *McDonnell Douglas* court offered this explanation for rejecting an age sub-group claim:

> [I]f such claims were cognizable under the statute, a plaintiff could bring a disparate-impact claim despite the fact that the statistical evidence indicated that an employer's RIF criteria had a very favorable impact upon the entire protected group of employees aged 40 and older, compared to those employees outside the protected group. We do not believe that Congress could have intended such a result.
>
> We agree, moreover, with the district court that if disparate-

- 14 -

Case 2:06-cv-02704-JAT   Document 139   Filed 03/09/09   Page 15 of 15

> impact claims on behalf of subgroups were cognizable under the ADEA, the consequence would be to require an employer engaging in a RIF to attempt what might well be impossible: to achieve statistical parity among the virtually infinite number of age subgroups in its workforce.

*McDonnell Douglas Corp.,* 191 F.3d at 951.

The Court agrees with the circuits that have rejected disparate impact claims based on age sub-groups. The Court believes that the Ninth Circuit Court of Appeals would also agree with those circuits. The Court therefore finds that Plaintiffs have not met their prima face burden on their disparate impact claim.

Because Plaintiffs have not carried their burden on either their disparate treatment or disparate impact claims, the Court will award summary judgment to Defendant.

Accordingly,

IT IS ORDERED GRANTING Defendant's Motion for Summary Judgment (Doc. #93).

DATED this 9th day of March, 2009.

James A. Teilborg
United States District Judge

- 15 -